[No. C.D. 5200    En Banc.    January 14, 1971.]

*In the Matter of the Disciplinary Proceeding Against J.*
Morrison MacDonald, *an Attorney at Law.**

*Robert O. Wells, Jr.,* for Board of Governors.

PER CURIAM.—J. Morrison MacDonald was admitted to the practice of law in this state on March 3, 1961. Thereafter, until he moved to Alaska in mid-1967, he resided and practiced law in Seattle. By 1962, he had embarked upon the course of conduct that has culminated in these proceedings.

At the direction of the Board of Governors, disciplinary proceedings were commenced against Mr. MacDonald, who was then residing in Sitka, Alaska. Personal service of the formal complaint and notice to answer was achieved on January 20, 1969. Subsequent additional notices were served either personally or by mail. During the bar's investigation, Mr. MacDonald's responses have been variously nonexistent or perfunctory. Though amply notified, he was neither present nor represented by counsel at the formal hearings on the items of complaint and has not responded at any stage of these proceedings.

The hearing panel, on the basis of credible and uncontradicted testimony by complaining witnesses (Mr. MacDonald's former clients) together with corroborating evidence, found the facts to be substantially as alleged in eight items of complaint. One of these involves the failure to cooperate during investigation of the substantive complaints. The other items pertain to Mr. MacDonald's conduct toward clients, spanning the time between 1962 and mid-1968. These may be summarized as follows:

(1) Respondent MacDonald undertook to represent a Mr. and Mrs. Hallgarth in a personal injury claim, on a contingent fee basis as to any amount received over a settlement

*Reported in 479 P.2d 941.

amount already offered. He misled them into believing that suit had been commenced and was pending trial, when he had never filed the action. He evaded the Hallgarths' inquiries, and told them that the trial date had been continued. In fact, respondent had settled the case for $1,500 without the clients' knowledge or consent and had kept the money. Respondent has not communicated with or paid the Hallgarths.

(2) Respondent undertook to represent a Mr. Cool in a divorce action and, although retained in time to make an appearance before a temporary restraining order against his client was made permanent, neither appeared in the action nor contacted the wife's attorney. As a result, the restraining order was made permanent and a default entered against Mr. Cool. Respondent later contacted the wife's attorney as to setting aside the default, but took no further steps in the matter. Subsequently, after many evasions of Mr. Cool, respondent gave him two bogus "certified copies of divorce decrees." On the strength of these, both parties believed that they were divorced, and they subsequently remarried. Mr. Cool has been required to pay another full attorney's fee and costs in order to obtain a valid divorce.

(3) Respondent undertook to represent a Mr. Bly in three matters: (1) a delinquent account collection, (2) a personal injury action, and (3) a claim for specific performance or damages in contract. As to each of these matters, respondent was frequently asked about the status of things, and he repeatedly told Mr. Bly that complaints had been filed and the trials would shortly occur. In fact, no actions were filed in any of these matters. Respondent's excuse as to the first was that he had forgotten. As to the second, the statute of limitations ran before Mr. Bly discovered that action had not been commenced. Respondent admitted malpractice and promised to repay Mr. Bly his damages, but has not made any payment. As to the third, it was only after Mr. Bly consulted another attorney that he learned that no suit had been filed. The statute of limitations had also expired on that claim.

(4) Respondent undertook to represent a Mrs. Donahoe in her suit for separate maintenance, and did commence that action. He then suggested that she change the action to one for divorce and she agreed. Pending the action, Mrs. Donahoe moved to Spokane. Twice, respondent requested her to come from Spokane to a meeting at the King County courthouse. In the first instance, respondent did not appear and could not be reached. In the second instance, respondent did not appear, but was reached by telephone and told Mrs. Donahoe to come to his office. There, he misrepresented to her that there had been a change in the law, that, because of this change, her divorce decree had already been signed and filed. Mrs. Donahoe then paid respondent his fee and received what she remembers to have been a "decree of divorce." Later she learned, by happenstance, that the action had never been converted to one for divorce, that no divorce decree had been filed and that the action had been dismissed on clerk's motion for want of prosecution. She called respondent in Alaska, and was reassured that she had been divorced and told that a confirming paper would follow. Respondent asked her not to go to the Bar Association. No confirming paper has been forthcoming.

Mr. MacDonald's conduct reflects blatant violations of his oath and duties as an attorney. His acts and omissions involve moral turpitude and dishonesty in violation of DRA 1.1(c) and 1.1(j), and CPE 11, 21, and 29. The hearing panel and the Board of Governors have recommended that Mr. MacDonald be disbarred. We agree. *See e.g., In re Chantry*, 67 Wn.2d 190, 407 P.2d 160 (1965).

J. Morrison MacDonald is hereby disbarred from the practice of law in this state. The clerk of court is directed to strike his name from the roll of practicing attorneys.

We find the statement of costs as filed with the clerk to be reasonable. The amount thereof is hereby fixed and settled. DRA 7.